**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:<br><br>**VASCULAR ACCESS CENTERS, L.P.**<br><br>Debtor | Case No. 19-17117-AMC<br><br>Chapter 11 Proceeding<br>Hon. Ashley M. Chan, U.J.B.J. |
| **DAVID COHEN, M.D.**<br><br>Plaintiff<br><br>v.<br><br>**VASCULAR ACCESS CENTER, L.P., PHILADELPHIA VASCULAR INSTITUTE, LLC, VASCULAR ACCESS CENTER MEMPHIS, LLC, VASCULAR ACCESS CENTER BOLIVAR COUNTY, LLC, PERIPHERAL VASCULAR INSTITUTE OF PHILADELPHIA, LLC, PA VASCULAR INSTITUTE, LLC and JAMES MCGUCKIN** | Adv No. |

**ADVERSARY COMPLAINT**

Plaintiff David Cohen, M.D. ("Dr. Cohen" or "Plaintiff") hereby states by way of Adversary Complaint against defendants: (i) Vascular Access Centers, L.P.; (ii) Philadelphia Vascular Institute, LLC; (iii) Vascular Access Center Memphis, LLC; (iv) Vascular Access Center Bolivar County, LLC; (v) Peripheral Vascular Institute of Philadelphia, LLC; (vi) PA Vascular Institute, LLC; and (vii) James McGuckin, as follows:

1

## JURISDICTION & VENUE

1. This is an adversary proceeding pursuant to *Fed. R. Bankr. P.* § 7001(2), (7) and (9) and 11 U.S.C. § 105.

2. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. 157.

3. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

4. In the alternative, this Court has "related to" jurisdiction pursuant to 28 U.S.C. § 157(c).

5. Venue is properly fixed in this Court pursuant to 28 U.S.C. § 1409.

6. The applicable statutory basis for the claims asserted herein include, but are not limited to, 11 U.S.C. § 105 and 28 U.S.C. § 157.

7. Plaintiff consents to the jurisdiction of the Bankruptcy Court over any matters alleged in this Complaint that may be determined to be a non-core proceeding pursuant to 28 U.S.C. § 157(c)(2).

## PARTIES

8. Upon information and belief, defendant Vascular Access Centers, L.P. (the "Debtor") is a limited partnership organized under the laws of the State of Pennsylvania, with an address located at 2929 Arch Street, Ste. 1705, Philadelphia, PA 19104.

9. Defendant Philadelphia Vascular Institute, LLC ("PVI") is a limited liability company organized under the laws of the State of Pennsylvania with an address located at 116 Pine Street, Ste. 320, Harrisburg, PA 17101.

10. Defendant Vascular Access Center Memphis, LLC ("VAC of Memphis") is a limited liability company organized under the laws of the State of Tennessee with a registered

agent for service of process c/o David Arrieta, 28 White Bridge Road, Ste. 300, Nashville, TN 37205-1492.

11. Defendant Vascular Access Center Bolivar County, LLC ("VAC of Bolivar") is a limited liability company organized under the laws of the State of Mississippi with a registered agent for service of process of C.T. Corporation System, 645 Lakeland East Drive, Ste. 101, Flowood, MS 39232.

12. Defendant, Peripheral Vascular Institute of Philadelphia, LLC ("PeVI") is a limited liability company organized under the laws of the State of Pennsylvania with a registered agent for service of process of C.T. Corporation System, 600 N. 2nd Street, Ste. 401, Harrisburg, PA 17101.

13. Defendant, PA Vascular Institute, LLC ("PA Vascular") is a limited liability company organized under the laws of the State of Pennsylvania with a registered agent for service of process of C.T. Corporation System, 600 N. 2nd Street, Ste. 401, Harrisburg, PA 17101.

14. Upon information and belief, defendant James McGuckin ("McGuckin") is a resident of the State of Pennsylvania with an address at 585 County Line Road, Wayne, PA 19807.

## BACKGROUND

### A. The Bankruptcy

15. On November 12, 2019 (the "Petition Date"), an involuntary petition was filed against the Debtor for relief under Chapter 11 of the United States Bankruptcy Code. The Debtor consented to this relief and an Order for relief was entered on November 25, 2019.

16. On motion for an Order dismissing the Bankruptcy Case and/or alternatively appointing a Chapter 11 Trustee [*Docket Entry # 52*], the Court entered an Order appointing Steven Falanga, Esq. as Chapter 11 Trustee of the Debtor.

17. In its February 7, 2020 Opinion, [*Docket Entry # 234*], the Bankruptcy Court noted that McGuckin's "total lack of credibility and trustworthiness and his self-serving conduct before and during the bankruptcy" justified the appointment of Mr. Falanga as Chapter 11 Trustee over the Debtor.

18. Additionally, in this Court's February 7, 2020 Opinion [*Docket Entry # 234*], the Bankruptcy Court noted that the Debtor conducts its business through several limited liability company subsidiaries throughout the United States (the "VAC Centers"), including VAC of Memphis and VAC of Bolivar.

19. Upon information and belief, the Debtor owns a 78.73% membership interest in VAC of Memphis and a 78.72% membership interest in VAC of Bolivar respectively.

20. Upon information and belief, prior to the appointment of the Trustee, both the Debtor and PVI were controlled and dominated by McGuckin, who was both the general partner of the Debtor and sole member of PVI.

21. Plaintiff was previously employed by PVI, an affiliate of the Debtor, to provide interventional radiology services at VAC of Memphis and VAC of Bolivar.

A. **The Employment Agreement and PVI's Breach of Its Terms**

22. The terms of Plaintiff's employment with PVI are set forth in a written May 11, 2016 Employment Agreement, a copy of which is attached to this Complaint at **Exhibit "A"**.

23. The Employment Agreement provides that PVI is obligated to pay Plaintiff annually, in addition to his base compensation, an amount equal to five percent (5%) of annual revenues collected (the "Productivity Incentive") over the bonus threshold amount of: (i) Five

4

Million and 00/100 ($5,000,000.00) Dollars for VAC of Memphis; and (ii) Three Million Dollars for VAC of Bolivar.  See Exhibit "A", ¶ 3(c).

24.     Although PVI paid Plaintiff's base compensation due and owing under the Employment Agreement, PVI has materially breached its contractual obligations under the Employment Agreement by failing to pay to Plaintiff his fourth (4th) quarter 2019 Productivity Incentive in the approximate amount of $174,806.09, plus any applicable interest that is due on this sum.

25.     PVI further materially breached its contractual obligations under the Employment Agreement by failing and/or refusing to pay to Plaintiff his 2020 Productivity Incentive in the approximate amount of $59,160.15, plus any applicable interest that is due on this sum.

26.     As a result of these material breaches, Plaintiff terminated his employment with PVI pursuant to the procedures set forth in Section 8(b)(i) of the Employment Agreement.

27.     The last day of Plaintiff's employment with PVI was October 23, 2020.

## COUNT I

### (Breach of Contract as to PVI)

28.     Plaintiff repeats the allegations in the preceding paragraphs of the Complaint and incorporates them by reference as if fully set forth herein at length.

29.     Plaintiff began his employment with PVI based upon the material representations, terms and conditions made by PVI that are memorialized in the written Employment Agreement between Plaintiff and PVI.

30.     The Employment Agreement between Plaintiff and PVI constitutes a valid and binding contract entered into by Plaintiff and PVI, and agreed to by PVI under no duress or undue influence.

31. Despite Plaintiff's full performance under the Employment Agreement, PVI has failed to pay to Plaintiff his outstanding bonus compensation for 2019 and 2020 in material breach of that Employment Agreement.

32. Despite demand for payment, PVI has failed to pay Plaintiff his outstanding contractual bonus due and owing.

33. As a result of PVI's material breach, Plaintiff has suffered damages and continues to suffer damages.

## COUNT II

### (Breach of Implied Covenant of Good Faith and Fair Dealing as to PVI)

34. Plaintiff repeats the allegations in the preceding paragraphs of the Complaint and incorporates them by reference as if fully set forth herein at length.

35. PVI entered into a binding Employment Agreement with Plaintiff which contractually entitles Plaintiff to bonus compensation based upon the metrics provided in the Employment Agreement.

36. Pursuant to applicable State contract law, PVI was obligated to act fairly and in good faith in PVI's performance under the terms of the Employment Agreement with Plaintiff.

37. PVI, without any reasonable justification, has refused to perform its obligation under the Employment Agreement to pay Plaintiff the bonus compensation due to him for the 2019 and 2020 years.

38. As a result of PVI's breach, PVI's conduct violates the implied covenant of good faith and fair dealing that is implied in every contract in the State of Pennsylvania, and all other states, including Tennessee and Mississippi.

BE:11602047.2/COH361-278238

39. As a direct and proximate result of PVI's breach of these implied covenants, Plaintiff has suffered, and continues to suffer, economic harm for entitling him to an award of damages to the greatest extent permitted by law.

## COUNT III

### (Unjust Enrichment as to PVI, VAC of Memphis and VAC of Bolivar)

40. Plaintiff repeats the allegations in the preceding paragraphs of the Complaint and incorporates them by reference as if fully set forth herein at length.

41. Defendants were obligated to pay Plaintiff his contractual bonuses for services rendered at VAC of Memphis and VAC of Bolivar.

42. Plaintiff reasonably relied upon Defendants' promise by, among other things, accepting the terms of the Employment Agreement with PVI and providing medical services at the VAC of Memphis and VAC of Bolivar facilities.

43. As a result of Plaintiff's efforts, PVI, VAC of Memphis and VAC of Bolivar generated millions of dollars in revenue from the medical services that Plaintiff provided, which they were then able to distribute to McGuckin to the detriment of Defendants' creditors.

44. Permitting Defendants to retain the monies they received from Plaintiff's uncompensated work would violate notions of good conscience and equity. Therefore, Defendants should be required to remit to Plaintiff the monies it received due to his service and award Plaintiff damages to the greatest extent permitted by law.

## COUNT IV

### (Quantum Meruit)

45. Plaintiff repeats the allegations in the preceding paragraphs of the Complaint and incorporates them by reference as if fully set forth herein at length.

7

46. Plaintiff performed services for Defendants in good faith reliance that he would be paid agreed upon salary and bonus.

47. Defendants (including the Debtor) accepted the fruits of Plaintiff's labor and received the benefits of such labor. Those benefits continued following the Debtor's bankruptcy and the Debtor incurred a benefit to the bankruptcy estate from Plaintiff's labor.

48. Plaintiff expected to be compensated for this work in line with the bonus structure set forth in the Employment Agreement.

49. Plaintiff is entitled to the reasonable value of the medical services, time and effort, he provided to Defendants that Defendants benefit from.

## COUNT V

### (Substantive Consolidation)

50. Plaintiff repeats the allegations in the preceding paragraphs of the Complaint and incorporates them by reference as if fully set forth herein at length.

51. During testimony before the Bankruptcy Court on a hearing to consider the appointment of a Trustee, "McGuckin testified that he essentially considered Peripheral Vascular, PA Vascular, PVI and himself to be the same entity since all of the money came from him." *[Docket Entry 234, p. 27]*.

52. The Court likewise determined that PVI was not a creditor of the Debtor and asserted a false $1.2 Million Dollar loan claim against the Debtor for the purpose of placing the Debtor into Bankruptcy in order to gain a litigation advantage in separate proceedings against the limited partner of the Debtor. Specifically, the Court determined that McGuckin was "either lying when he testified that PVI loaned millions of dollars to VAC or he is delusional." *[Docket Entry 234, p. 26-27]*.

8

53. Upon information and belief, PVI, PeVI, PA Vascular and the Debtor were operated by McGuckin:

(a) without accounting and/or memorialization for the transfers of money and property among them, or to the Debtor;

(b) without any observance of corporate formalities;

(c) for the sole benefit of McGuckin; and

(d) without any effort to separate the monies of each of these companies, which he co-mingled with one another and his own.

54. These facts compel substantive consolidation of these defendant entities with the Debtor's estate, to promote the recapture of transferred assets and the fair treatment of creditors.

## COUNT VI

### (Alter Ego/Veil Piercing)

55. Plaintiff repeats the allegations in the preceding paragraphs of the Complaint and incorporates them by reference as if fully set forth herein at length.

56. Upon information and belief, while serving as general partner of the Debtor and sole member of PVI, McGuckin engaged in impermissible self-dealing by diverting assets from the Debtor to other entities affiliated with him.

57. Upon information and belief, McGuckin had actual knowledge or constructive knowledge of the debts due and owing to Plaintiff at the time that he caused PVI to mutually breach the Employment Agreement with Plaintiff.

58. Upon information and belief, McGuckin caused PVI to be substantially undercapitalized and lack the funds necessary for it to conduct its business operations in the ordinary course.

9

59. McGuckin effectively acknowledged his abuse of PVI's corporate form by creating a fictitious loan obligation between PVI and the Debtor and then using PVI to place the Debtor into involuntary bankruptcy based upon that phony pretext.

60. McGuckin further acknowledged his abuse of PVI's corporate form during his testimony before the Bankruptcy Court on a hearing to consider the appointment of a Trustee, when "McGuckin testified that he essentially considered Peripheral Vascular, PA Vascular, PVI and himself to be the same entity since all of the money came from him." *[Docket Entry 234, p. 27]*.

61. The actions taken by McGuckin evidence his blatant disregard of PVI's corporate form and formalities, which he used solely for his own personal benefit to Plaintiff's detriment.

62. Accordingly, McGuckin is partially liable for PVI's debts and liabilities, including but not limited to Plaintiff's unpaid bonus compensation.

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly and severally, as follows:

  (a) consequential and compensatory damages;

  (b) attorneys' fees and costs of suit;

  (c) a judgment substantively consolidating PVI with the Debtor's bankruptcy estate to satisfy Plaintiff's claim for monies contractually due and owing to him under his Employment Agreement; and

  (d) for any other relief the Court deems equitable and proper.

Dated: March 15, 2021             By: /s/ Autumn M. McCourt
                                               Brach Eichler LLC
                                               101 Eisenhower Parkway
                                               Roseland, NJ  07068
                                               Tel:  (973) 403-3104
                                               Fax:  (973) 618-5931
                                               E-mail: amccourt@bracheichler.com